UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| RYAN O'DELL, | : |
| | : |
| Plaintiff, | : Civil Action No. 23-cv-2640 |
| | : |
| v. | : **COMPLAINT FOR VIOLATIONS OF** |
| | : **SECTIONS 14(a) AND 20(a) OF THE** |
| BROADMARK REALTY CAPITAL INC., | : **SECURITIES EXCHANGE ACT OF** |
| JEFFREY B. PYATT, KEVIN M. | : **1934** |
| LUEBBERS, STEPHEN G. HAGGERTY, | : |
| DANIEL J. HIRSCH, DAVID A. KARP, | : **JURY TRIAL DEMANDED** |
| NORMA J. LAWRENCE, and PINKIE D. | : |
| MAYFIELD, | : |
| | : |
| Defendants. | |

---

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Broadmark Realty Capital Inc. ("Broadmark or the "Company") the members Broadmark's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants"), for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed merger between Broadmark and Ready Capital Corporation and affiliates ("Ready Capital").

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Registration Statement on Form S-4 (the

"Registration Statement") to be filed on March 27, 2023 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Registration Statement recommends that Company stockholders vote in favor of a proposed transaction whereby RCC Merger Sub, LLC, a Delaware limited liability company and a wholly owned subsidiary of Ready Capital ("Merger Sub") will merge with and into Broadmark with Broadmark surviving the transaction as a subsidiary of Ready Capital (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on February 26, 2023 (the "Merger Agreement"), each Broadmark stockholder will receive the right to receive 0.47233 shares of Ready Capital common stock (the "Merger Consideration"). Following the consummation of the Proposed Transaction, Company shareholders will own 36% of the combined company common stock outstanding and Ready Capital shareholders will own approximately 64% of the combined company common stock outstanding.

3. As discussed below, Defendants have asked Broadmark's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Registration Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Registration Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, J.P. Morgan Securities LLC ("J.P. Morgan") in support of its fairness opinion.

4. It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the

material information discussed below is disclosed to Broadmark's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because plaintiff resides in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Broadmark stocks and has held such stocks since prior to the wrongs complained of herein.

10. Individual Defendant Jeffrey B. Pyatt has served as a member of the Board since 2019 and is the Chairman of the Board and the Company's Interim Chief Executie Officer.

11. Individual Defendant Kevin M. Luebbers has served as a member of the Board since 2019 and is the Company's Interim President.

12. Individual Defendant Stephen G. Haggerty has served as a member of the Board since 2019.

13. Individual Defendant Daniel J. Hirsch has served as a member of the Board since 2019.

14. Individual Defendant David A. Karp has served as a member of the Board since 2019.

15. Individual Defendant Norma J. Lawrence has served as a member of the Board since 2019.

16. Individual Defendant Pinkie D. Mayfield has served as a member of the Board since 2022.

17. Defendant Broadmark is a Maryland corporation and maintains its principal offices at 1420 Fifth Avenue Suite 2000, Seattle, Washington 98101. The Company's stock trades on the New York Stock Exchange under the symbol "BRMK."

18. The defendants identified in paragraphs 10-16 are collectively referred to as the "Individual Defendants" or the "Board."

19. The defendants identified in paragraphs 10-17 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.     The Proposed Transaction**

20. Broadmark operates as a commercial real estate finance company in the United States. It engages in underwriting, funding, servicing, and managing a portfolio of short-term trust loans to fund the construction and development, or investment in residential or commercial properties. The Company has elected to be taxed as a real estate investment trust (REIT) for the United States federal income tax purposes. As a result, it would not be subject to corporate income tax on that portion of its net income that is distributed to stockholders, if it annually distributes

dividends equal to at least 90% of its REIT taxable income to its stockholders. The Company was founded in 2010 and is headquartered in Seattle, Washington.

21. On February 27, 2023, the Company and Ready Capital jointly announced the Proposed Transaction:

> NEW YORK, Feb. 27, 2023 (GLOBE NEWSWIRE) -- **Ready Capital Corporation (NYSE:RC) ("Ready Capital"),** a multi-strategy real estate finance company that originates, acquires, finances and services small-to-medium balance commercial loans, and **Broadmark Realty Capital Inc. (NYSE:BRMK) ("Broadmark")**, a specialty real estate finance company that specializes in originating and servicing residential and commercial construction loans, announced today that they have entered into a definitive merger agreement pursuant to which Broadmark will merge with Ready Capital. Upon completion of the merger, Ready Capital is expected to have a pro forma equity capital base of $2.8 billion.
>
> Under the terms of the merger agreement, each share of Broadmark common stock will be converted into 0.47233 shares of Ready Capital common stock, or a total of approximately 63 million shares of Ready Capital common stock. The respective closing stock prices for Ready Capital and Broadmark on February 24, 2023 imply an offer price of $5.90 per Broadmark share, representing a 41% premium or approximately 0.85x tangible book value as of December 31, 2022. Upon the closing of the merger, Ready Capital stockholders are expected to own approximately 64% of the combined company's stock, while Broadmark stockholders are expected to own approximately 36% of the combined company's stock. In addition, Ready Capital will assume Broadmark's outstanding senior unsecured notes.
>
> Based on the closing price of Ready Capital's common stock on February 24, 2023, the market capitalization of the combined company is approximately $2.2 billion. The combined company will operate under the name "Ready Capital Corporation" and its shares will trade on the NYSE under the existing ticker symbol "RC". Waterfall Asset Management, LLC will continue to manage the combined company.
>
> "We are excited about the continued growth of our commercial real estate investment platform with the Broadmark transaction and believe it will provide strategic and financial benefits to all

shareholders," stated Ready Capital Chairman and Chief Executive Officer Thomas Capasse. "We believe our asset management and workout experience, along with the synergies we expect to realize, position us well over the long-term."

"We are thrilled to join the Ready Capital team to usher in a new chapter of growth for both organizations by forming the 4th largest commercial mortgage REIT," said Broadmark Chairman and Interim Chief Executive Officer Jeffrey Pyatt. "Our synergies are undeniable given the complementary skillsets, product offerings and geographic footprint. The Broadmark team is looking forward to working closely with our colleagues at Ready Capital to maximize the potential of our combined platform and deliver value for our shareholders."

**Anticipated Benefits to Ready Capital and Broadmark Stockholders from the Merger**

- Highly Synergistic Business Models with Natural Alignment Across Geographies, Products, Sponsors, and Credit Philosophies: Ability for the combined company to capture economics throughout the full lifecycle of a property and retain sponsor relationships beyond construction and/or bridge stages.

- Strategically and Financially Compelling: Synergistic franchises and optimized capital management, among other factors, create a highly accretive transaction.

- Robust Liquidity Supported by Proven Asset Management and Diversified Access to Funding: Immediate deleveraging benefit to Ready Capital with the opportunity to prudently optimize capital and enhance the earnings profile of the combined company.

- Significantly Increased Scale and Opportunities for Operational Efficiency: Creates the 4th largest commercial mortgage REIT with increased operational leverage.

- Proven Acquisition Track Record Provides Long-Term Upside to Shareholders: Integration and post-close growth strategy informed by Ready Capital's six mergers and acquisitions since 2016.

Additional information on the transaction and the anticipated effects on Ready Capital can be found in the investor deck relating to the merger on Ready Capital's website. The investor deck is also furnished by Ready Capital in a Current Report on Form 8-K on the date hereof.

**Management, Governance and Corporate Headquarters**

> Upon completion of the merger, Ready Capital's Chairman, Chief Executive Officer and Chief Investment Officer, Thomas Capasse, will continue to lead the company and Ready Capital executives Jack Ross, Andrew Ahlborn, Gary Taylor and Adam Zausmer will remain in their current roles. The combined company will remain headquartered in New York, New York. The Board of the combined company is expected to increase by three Broadmark-designated directors to twelve directors.
>
> **Timing and Approvals**
>
> The transaction has been unanimously approved by each of the Boards of Directors of Ready Capital and Broadmark. The transaction is expected to close during the second quarter of 2023, subject to the respective approvals by the stockholders of Ready Capital and Broadmark and other customary closing conditions.
>
> **Advisors**
>
> Wells Fargo Securities, LLC is acting as exclusive financial advisor and Alston & Bird LLP is acting as legal advisor to Ready Capital. J.P. Morgan Securities LLC is acting as exclusive financial advisor to Broadmark. Sidley Austin LLP is acting as legal advisor and Bryan Cave Leighton Paisner LLP is acting as tax legal advisor to Broadmark.

\* \* \*

22. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that Broadmark's stockholders are provided with the material information that has been omitted from the Registration Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.** **The Materially Incomplete and Misleading Registration Statement**

23. On March 27, 2023, Broadmark and Ready Capital jointly filed the Registration Statement with the SEC in connection with the Proposed Transaction. The Registration Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's

stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

24. The Registration Statement fails to provide material information concerning financial projections by management and relied upon by J.P. Morgan in its analyses. The Registration Statement discloses management-prepared or management-approved financial projections for the Company and Ready Capital which are materially misleading. The Registration Statement indicates that in connection with the rendering of their fairness opinion, that the management of Ready Capital and Broadmark prepared certain non-public financial forecasts (the "Projections") and provided them to the Board and the financial advisors with forming a view about the stand-alone and pro forma valuations. Accordingly, the Registration Statement should have, but fails to provide, certain information in the projections that management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

25. For *Ready Capital Projections*, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2023 through 2026: Distributable Earnings Per Share, but fails to provide line items used to calculate this metric

and/or a reconciliation of the non-GAAP metric to its most comparable GAAP measure, in direct violation of Regulation G and consequently Section 14(a).

26. For *Broadmark Projections*, the Registration Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics for fiscal years 2023 through 2027: Distributable Earnings, but fails to provide line items used to calculate this metric and/or a reconciliation of the non-GAAP metric to its most comparable GAAP measure, in direct violation of Regulation G and consequently Section 14(a).

27. When a company discloses non-GAAP financial measures in a Registration Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

28. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.

29. Thus, to cure the Registration Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Registration Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measures to make the non-GAAP metric included in the Registration Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses for Broadmark*

30. With respect to J.P. Morgan's *Public Trading Multiples* analysis, the Registration Statement fails to disclose: (i) the financial metrics and multiples for each company selected by J.P. Morgan for the analysis; and (ii) the inputs and assumption underlying the reference ranges for P/TBV and 2023E Dividend Yield.

31. With respect to J.P. Morgan's *Broadmark Dividend Discount Analysis*, the Registration Statement fails to disclose: (i) the terminal value for the company; (ii) the inputs and assumptions underlying the terminal multiple range of 0.50x to 0.95x; and (iii) the inputs and assumptions underlying the cost of equity range of 13.50% to 14.50%.

32. With respect to J.P. Morgan's *Ready Capital Dividend Discount Analysis*, the Registration Statement fails to disclose: (i) the terminal value for Ready Capital; (ii) the inputs and assumptions underlying the terminal multiple range of 0.50x to 0.95x; and (iii) the inputs and assumptions underlying the cost of equity range of 13.00% to 14.00%.

33. With respect to J.P. Morgan's *Discounted Cash Flow-Based Value Creation Analysis*, the Registration Statement fails to disclose: (i) the inputs and assumptions underlying the terminal growth rate range of 2.25% to 2.75%; (ii) the inputs and assumptions underlying the discount rate range of 10.50% to 11.50%;

34. With respect to J.P. Morgan's *Selected Transaction Multiples Analysis*, the Registration Statement fails to disclose: (i) the financial metrics and multiples for each transaction selected by J.P. Morgan for the analysis; (ii) the inputs and assumptions underlying the reference range for P/TBV of 0.85x – 1.15x.

35. With respect to J.P. Morgan's analysis of equity research analyst price targets for Broadmark, the Registration Statement fails to disclose: (i) the research analysts observed; and (ii) the price targets published by each research analyst.

36. In sum, the omission of the above-referenced information renders statements in the Registration Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

37. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

39.     Defendants have issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

40.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

41.     Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement.  The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

42.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and

omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

43. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44. The Individual Defendants acted as controlling persons of Broadmark within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Broadmark, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Broadmark, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

45. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

46. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Broadmark, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was

reviewed by the Board prior to voting on the Proposed Transaction. The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Registration Statement.

47. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

48. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

49. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

50. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with,

consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Registration Statement;

  B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

  C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

  D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

  E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: March 29, 2023

**MELWANI & CHAN LLP**

By: */s/ Gloria Kui Melwani*
Gloria Kui Melwani (GM5661)
1180 Avenue of the Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*